**Santiago Juan RIVERA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–06–00059–CR.

Court of Appeals of Texas, Waco.

July 5, 2007.

Rehearing Overruled Sept. 25, 2007.

Stan Schwieger, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Santiago Juan Rivera, Jr. of two counts of aggravated sexual assault, sentencing him to thirty years in prison on count one and sixty years in prison on count two. Rivera argues that the trial court committed egregious error by including a limiting instruction in the charge that: (1) limited the jury's consideration of extraneous offenses to an improper purpose; and (2) failed to limit the jury's use of extraneous offenses to a proper purpose. We affirm.

## FACTUAL BACKGROUND

Rivera lived next door to A.W. Rivera and A.W.'s mother were friends and even dated at one time. A.W. and her siblings sometimes visited Rivera's home. Rivera also spent time at A.W.'s home. A.W. testified that Rivera had touched her "front part" and penetrated her "folds" with his finger, had "been putting his private area in [A.W.'s] private area," and had done this "several times," between five

and ten times.[1] This happened "anytime," but usually while A.W.'s mother was running errands. Of these "times," only one took place at Rivera's home.

The indictment alleged that Rivera penetrated A.W.'s sexual organ by his finger and by his sexual organ. At trial, Rivera denied committing the offenses and denied ever penetrating A.W. or engaging in any sexual contact with A.W. He stood by the written statement he provided to Detective Lonnie Underberg:

> My name is Santiago Rivera and as to the night of an incident regarding [A.W.], there was the night myself, my daughter, and [A.W.] were asleep on my bed. I awakened to I thought was a dream of [A.W.] straddling me so I pushed her aside and went back to sleep. The incident happened in my bedroom.

However, Investigator Don Marshall testified that prior to giving this statement, Rivera admitted to "some contact between his penis and the little girl's vagina" and that he "put his penis inside of her vagina about halfway." Rivera denied making these statements, claiming that, during the interview, Marshall presented different scenarios for what may have occurred, all of which Rivera denied.

After the State rested, and upon Rivera's request, the State elected to rely on the date alleged in the indictment as the last instance of abuse described by A.W. This particular act involved the "straddling" incident described in Rivera's written statement. The court gave the following limiting instruction in the jury charge:

> You are instructed that if there is any testimony before you in this case re-

garding the defendant's having committed any offenses other than the offenses alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in *passing upon the credibility of the testimony of the defendant* as a witness in this case and for no other purpose.

(Emphasis added). Rivera neither requested this instruction nor objected to it.

## ANALYSIS

When reviewing a jury charge, we first examine the charge for error. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim.App.2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App.2003)). If error occurred, we then decide whether the error caused harm. *See id.* Where, as here, the defendant does not object to the charge, he must show egregious harm to be entitled to reversal. *See id.* at 743–44 (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)).

In his first issue, Rivera contends that the court limited the jury's consideration of extraneous offenses to an improper purpose. In his second issue, Rivera complains that the trial court erred by failing to give an instruction in the jury charge that limited the jury's consideration of the extraneous offenses to their proper admissible purpose. Because Rivera addresses both these issues collectively, we will do the same.

---

1. Although Rivera states that "the extraneous offenses were by the victim," he points to no place in the record other than A.W.'s testimony regarding the number of acts. We presume that this is the "extraneous" offense evidence of which he complains. This testimony was elicited from A.W. by the State and repeated by the defense during cross-examination.

■ When the State elects the acts on which it will rely for conviction, a defendant is entitled to an instruction charging the jury to consider only the elected acts in deciding guilt and limiting the jury's consideration of the other unelected acts to the purposes for which they were admitted. *See Bates v. State,* 165 Tex.Crim. 140, 305 S.W.2d 366, 368 (1957); *see also Duran v. State,* No. 03–02–00253–CR, 2003 WL 124196, at *4–5 (Tex.App.-Austin Jan.16, 2003, pet. ref'd) (mem.op.) (not designated for publication) (After the State's election, "appellant was entitled to have the jury instructed to consider only the elected acts in determining his guilt, and to have the jury further instructed regarding the limited purposes for which it could consider the other acts proved by the State."); *Martin v. State,* 176 S.W.3d 887, 905 (Tex.App.-Fort Worth 2005, no pet.) (After the State elects the act on which it will rely, "a defendant is entitled to have a limiting instruction given to the jury as to the remaining or extraneous incidents"). In this case, evidence of other "crimes, wrongs, or acts" committed by Rivera against A.W. was admissible for its bearing on the state of mind of Rivera and A.W. and on their previous and subsequent relationship. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp.2006). After the State elected the acts on which it would rely for conviction, a proper limiting instruction in the charge on the unelected—and thus ostensibly extraneous—offenses would have limited the jury's consideration of that evidence for its bearing on the state of mind of Rivera and A.W. and on their previous and subsequent relationship.

Except for prior convictions admitted under Rule of Evidence 609, extraneous-offense evidence is not admissible to impeach a testifying defendant. *See* TEX.R. EVID. 608(b); *see also* TEX.R. EVID. 609. The defendant can "open the door" by leaving a false impression with the jury about a relevant act or character trait, and evidence of an extraneous act that tends to rebut the false impression may be admissible to impeach the defendant, but with a limiting instruction informing the jury that it may use the extraneous-offense evidence to gauge the defendant's credibility. *See Daggett v. State,* 187 S.W.3d 444, 452–53 (Tex.Crim.App.2005). But in a case such as this where the extraneous offenses are the unelected offenses that were admissible under section 2 of article 38.37 and the defendant merely testifies that he did not commit the elected offenses and the now-extraneous (*i.e.,* unelected) offenses, a limiting instruction to the jury that it may use those extraneous offenses to pass on the credibility of the defendant's testimony is erroneous. *See Crawford v. State,* 696 S.W.2d 903, 907–08 (Tex.Crim.App.1985) (holding as erroneous trial court's limiting instruction that jury could consider extraneous offenses against same victim of charged offense only for impeaching defendant's credibility); *see also Sparks v. State,* 366 S.W.2d 591, 592 (Tex.Crim.App. 1963) (same).

■ The trial court erred by giving the jury an instruction that limited the extraneous offenses to an improper purpose—passing on the credibility of Rivera's testimony. Because no objection was made to this charge error, we review it for "egregious" harm. Egregious errors "affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo,* 175 S.W.3d at 750 (quoting *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996)). "[W]hether the error was so egregious that a defendant was denied a fair and impartial trial" requires us to consider: (1) the entire jury charge; (2) the state of the evidence; (3) the arguments of counsel; and (4) any other relevant information in

the record. *Ngo*, 175 S.W.3d at 750 n. 48 (citing *Almanza*, 686 S.W.2d at 171).

The charge's application paragraphs tracked the language of the indictment and instructed the jury to find Rivera guilty only if it found beyond a reasonable doubt that he had committed the offenses as alleged in the indictment, and the charge instructed the jury to acquit Rivera if it was unable to find guilt beyond a reasonable doubt.

The State argues that Rivera did not suffer egregious harm but actually *benefited* from the instruction because (1) the evidence was "admitted for all purposes" and (2) the court could have limited the jury's use of extraneous offense evidence to "passing upon the question of whether the act as alleged in the indictment actually occurred." We agree in part with the State because the purported "extraneous" acts could have been prosecuted under the indictment and were not extraneous offenses when admitted. *See Shea v. State*, 167 S.W.3d 98, 104 (Tex.App.-Waco 2005, pet. ref'd). And to the extent those acts became extraneous offenses when the State made its election, an appropriate instruction would have limited the jury's consideration of that evidence for its bearing on the state of mind of Rivera and A.W. and on their previous and subsequent relationship.

Whether the credibility instruction was more beneficial to Rivera than a state-of-mind/relationship limiting instruction is a close call (and one in the eye of the beholder). Moreover, the harm to Rivera must be actual, not just theoretical. *See Almanza*, 686 S.W.2d at 174. Because the evidence was admissible under article 38.37, the harm, if any, to Rivera from the erroneous limiting instruction was negligible, as the State did not mention the instruction in closing argument.

We next review the state of the evidence. In addition to A.W.'s testimony discussed above, A.W.'s mother, M.R., also testified. A.W. first told M.R. about the abuse. M.R. testified that A.W. described Rivera's "private area." M.R., having had a sexual relationship with Rivera, confirmed A.W.'s description. Debbie McElveen, a sexual assault nurse examiner, examined A.W. and discovered some abrasions. Dr. Ann Sims testified that McElveen's exam revealed that A.W.'s hymen was narrowed, dark red, and irritated, which could result from either abuse or other circumstances. Nevertheless, Dr. Sims testified that the medical evidence was consistent with A.W.'s testimony. As previously discussed, Investigator Marshall testified that Rivera eventually confessed to assaulting A.W.

In closing argument, the State made little mention of the extraneous offenses, and did not mention the erroneous instruction at all. In its rebuttal the State made it very clear that Rivera's credibility was at issue, but it was the defense that first mentioned the number of "times" of the alleged acts committed against A.W. when it sought to cast doubt on A.W.'s testimony.

In conclusion, we cannot say that Rivera suffered egregious harm as a result of the court's error. *See Ngo*, 175 S.W.3d at 743–44; *see also Almanza*, 686 S.W.2d at 171. Having found error but no egregious harm, we overrule Rivera's first and second issues. The trial court's judgment is affirmed.

Chief Justice GRAY concurs in the judgment affirming the conviction but not the opinion of the Court without a separate opinion.