**Affirmed and Memorandum Opinion filed October 22, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00878-CR

**BOBBY JAMES HOWARD, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 11-CR-1296**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Bobby James Howard, Jr. of possession of cocaine and assessed punishment for an enhanced felony at ten years' confinement. Appellant challenges his conviction in two issues concerning an erroneous jury instruction and the improper impeachment of a defense witness. We affirm.

BACKGROUND

In May 2011, Galveston Police Department Detective David Roark was surveilling Arrias Holland for suspected narcotics activity when Holland left his house and drove to a McDonald's restaurant. A white van backed into the parking space next to Holland. Holland got out of his vehicle and entered the van. After radioing for backup, Roark parked his undercover vehicle in front of the van so the van could not leave. Appellant was sitting in the front passenger's seat of the van, and Rodney Webb was sitting in the driver's seat. Holland was sitting in the rear.

Roark testified that as he got out of his vehicle, he saw appellant placing a bagged, beige object into his mouth. Roark approached the driver's side of the vehicle, which had the window rolled down, and saw Webb put two bagged, beige objects into his mouth. All of the objects looked like crack cocaine. Appellant reached for a bottle of water and began drinking. A few seconds later, Webb grabbed another bottle of water and began drinking. Roark told them to "stop eating the dope, spit it out and put their hands up." Appellant did not obey, and he kept dumping water into his mouth. Appellant began choking and gagging on the baggie, which was fairly large in size. As Roark attempted to open the driver's side door, appellant stepped out of the passenger's side door. Roark saw appellant take two steps from the van, reach into his mouth, and then discard the baggie of crack cocaine to appellant's right side. Roark told appellant to go toward the front of the van, but appellant began "bouncing up and down," moving around, and talking as a "distraction technique."

Roark was able to open the driver's side door and remove Webb from the vehicle. When Roark turned Webb to face the van, Webb looked at appellant and said, "Here," as he spit two baggies into his right hand and flung the baggies through the vehicle and out the passenger's side door. Appellant said, "Oh, no, no,

2

no," put his hands up, and walked to the front of the vehicle as Roark instructed him to do.

After Roark and the backup officer had secured appellant, Webb, and Holland, Roark found three baggies of crack cocaine on the ground. Roark testified appellant had been looking at one of the baggies when he was bouncing up and down, and that baggie "could not have come from the direction of Mr. Webb's hand" based on its position relative to the vehicle. Appellant told Roark that appellant was eating a baggie of marijuana.

Brian Nacu, a forensic scientist with the Texas Department of Public Safety Crime Lab, testified that appellant's baggie weighed 2.56 grams and contained cocaine. Appellant called Webb as a witness. Webb testified that all three bags of cocaine were his and that he had told Roark this. He also testified that he signed an affidavit after his arrest stating that the drugs were his. Webb acknowledged that appellant had "everything to lose" in this trial and that Webb had previously entered into a plea agreement for possession of cocaine and tampering with evidence charges related to this incident.

The jury found appellant guilty, found an enhancement true, and assessed punishment at ten year's confinement.

## JURY CHARGE

In his first issue, appellant contends the trial court erroneously instructed the jury to consider extraneous offenses for an improper purpose, that is, to determine appellant's credibility as a witness although appellant did not testify. The State responds that appellant was not egregiously harmed by this unobjected-to charge error.

3

Under *Almanza v. State*, "unobjected-to jury charge error will not result in reversal of a conviction in the absence of 'egregious harm.'" *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)). "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* To determine egregious harm, we must consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and the weight of the probative evidence, (3) the arguments of the parties, and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

The jury charge included the following paragraph regarding extraneous offenses:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the credibility of the defendant as a witness.

Appellant contends the "extraneous offense evidence" included Roark's interjection that appellant had committed tampering with evidence by attempting to eat the baggie of cocaine. Further, appellant contends Roark's testimony about appellant's "associating with Arias Holland" was evidence of an extraneous offense.

Appellant cites no factually analogous case for the proposition that he was egregiously harmed by the extraneous offense paragraph. To the contrary, the State correctly notes that the evidence was admissible for all purposes as res gestae, also known as same transaction contextual evidence. *See, e.g.*, *Wesbrook v.*

4

*State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *see also King v. State*, 189 S.W.3d 347, 355 (Tex. App.—Fort Worth 2006, no pet.) (evidence of tampering with evidence—disposing of a body—after a murder was same transaction contextual evidence and no limiting instruction was required).[1]  When evidence is admissible for all purposes, and the State does not emphasize the evidence for the purpose of weighing the defendant's credibility, then an erroneous instruction that the evidence may be considered for determining credibility is unlikely to cause egregious harm.  *See Rivera v. State*, 233 S.W.3d 403, 407 (Tex. App.—Waco 2007, pet. ref'd).  The Waco Court of Appeals found no egregious harm under these circumstances even when the defendant testified, and the State's argument to the jury "made it very clear that [the defendant's] credibility was at issue."  *Id.* The likelihood that appellant suffered egregious harm is even lower than in *Rivera*, given that appellant did not testify and his credibility was not at issue.

Appellant relies on *Heigelmann v. State*, in which the Texarkana Court of Appeals reviewed jury charge error for some harm, not egregious harm.  362 S.W.3d 763, 776–77 (Tex. App.—Texarkana 2012, pet. ref'd).  The charge correctly stated that extraneous offenses could be used solely to prove the identity of the defendant, but in response to a question from the jury, the court later said that the extraneous offense evidence could be used "to decide the innocence or guilt of Defendant in this case."  *Id.* at 774.  Because the instruction essentially allowed the jury "to convict on the basis of the extraneous offense(s)," the defendant suffered some harm.  *Id.* at 777.  However, the trial court in this case did not give such a broad instruction that would have allowed the jury to convict

---

[1] Further, appellant did not request a limiting instruction at the time the evidence was admitted, and the evidence therefore was admitted for all purposes.  *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001).

appellant based on any extraneous offenses. *Heigelmann* does not control the disposition here.

None of the *Almanza* factors favor a finding of egregious harm in this case. The jury charge contained instructions concerning the burden of proof, appellant's right to not testify, and the jury's role as the sole fact finder and exclusive judge of the credibility of witnesses, among other instructions. As discussed above, the primary contested issue was whether the jury believed the testimony of Roark or Webb. The State's closing argument emphasized this conflict in the evidence, not appellant's credibility.[2] Further, there is nothing in the record to suggest that the jury's attention was drawn to the alleged extraneous offenses or that the jury convicted appellant because of the trial court's suggestion the evidence could be used to determine appellant's credibility as a witness. Accordingly, this charge error did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect a defensive theory.

Having found no egregious harm, appellant's first issue is overruled.[3]

---

[2] Appellant urges that the State emphasized his credibility through a closing argument reference to "who has got the motive to lie, the guy that's got everything to lose or the guy that's already pled guilty and has nothing to lose." However, the State's remark followed a challenge to the credibility of Webb, not appellant. The State urged that Webb lied and "took one for the team."

[3] In one sentence of his brief, without citing authority, appellant contends, "This instruction further was a comment on Appellant's failure to testify." The State correctly notes that a comment referring to a defendant's failure to testify must be "clear," and it is "not sufficient that language might be construed as an implied or indirect allusion." *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001) ("The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify."). The instruction in this case does not appear to satisfy the *Bustamante* test, and regardless, appellant's failure to cite authority results in waiver of this argument. *See Muhammed v. State*, 331 S.W.3d 187, 195 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing Tex. R. App. P. 38.1(i)).

## IMPROPER IMPEACHMENT

In his second issue, appellant contends the trial court erred by allowing the prosecutor to impeach Webb's testimony with Roark's testimony. The State contends that appellant suffered no harm.

During the cross-examination of Webb, the following exchange occurred:

| | |
|---|---|
| The State: | So you're wanting the jury to believe you, a convicted felon, over Detective Roark, a police officer whose [sic] been with the Galveston Police Department for over 10 years? |
| Defense Counsel: | Objection. |
| Webb: | Yes, ma'am. |
| Defense Counsel: | Excuse me. Objection. Comparing the testimony of one witness against another is improper. |
| The Court: | Overruled. |
| The State: | You can answer the question. |
| Webb: | Yes, ma'am. |

On appeal, the State agrees that impeaching a witness with the testimony of another witness is error. *See, e.g.*, *Ex parte McFarland*, 163 S.W.3d 743, 755 n.37 (Tex. Crim. App. 2005); *Joseph v. State*, 367 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

However, "such questions are usually held harmless because they simply highlight the fact that defendant disagrees with the State's witnesses' testimony." *Joseph*, 367 S.W.3d at 745; *see also Lopez v. State*, 200 S.W.3d 246, 257 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (error in allowing the State to ask the defendant whether another witness was lying was harmless under Tex. R. App. P. 44.2(b)). When there is a sharp contrast in the testimony between the two witnesses, "testimony that the officer was wrong could not have injured [the

defendant] before the jury." *Id.*; *see also McKinney v. State*, 491 S.W.2d 404, 408 (Tex. Crim. App. 1973) (finding no reversible error "when the prosecutor, over objection, was permitted to ask appellant on cross examination if witnesses Adams and Maples were 'lying.'"). Appellant cites no case in which similar error was found harmful.

After reviewing the record, we conclude that the error does not affect appellant's substantial rights and does not justify reversal. The testimony simply highlighted the fact that Webb's testimony conflicted with Roark's. Further, we note that similar evidence was previously admitted without objection.[4] *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). Under these circumstances, appellant suffered no harm.

Appellant's second issue is overruled.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.


/s/     Sharon McCally
          Justice

Panel consists of Justices Christopher, McCally, and Donovan.

Do Not Publish — Tex. R. App. P. 47.2(b).

---

[4] Before the complained-of testimony, the State asked Webb, "So basically you're just saying that the officer is lying about everything?" Webb responded, without an objection from appellant, "I'm saying the officer is lying about the cocaine, putting it on Bobby Howard. It was all mine."