COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT WORTH

 

 

                                        NO. 2-08-235-CR

                                        NO. 2-08-236-CR

                                        NO. 2-08-237-CR

 

 

JAMES KEVIN POPE                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 415TH DISTRICT COURT
 OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

The
complainants in these cases are Appellant James Kevin Pope=s three
teenaged daughtersCtwins K.L.P. and K.M.P. and
youngest daughter K.O.P.; each indictment contains counts alleging conduct
perpetrated against a specific daughter. 
In all, a jury convicted Appellant of forty counts of sexual assault of
a child and three counts of sexual performance by a child.  The jury assessed his punishment at life
imprisonment and a $10,000 fine for each count of sexual assault of a
child.  For each count of sexual
performance by a child, the jury assessed his punishment at twenty years=
confinement and a $10,000 fine.  The
trial court sentenced Appellant accordingly and ordered that the sentences be
served consecutively.  Appellant
complains about the factual sufficiency of the evidence and the absence of a
jury instruction.  Because we hold that
the evidence is factually sufficient and that the trial court=s error
in omitting the jury instruction was harmless, we affirm the trial court=s
judgments. 

I.  Factual Sufficiency of the Evidence

In his
third, fourth, fifth, sixth, seventh, and eighth points, Appellant contends
that the evidence is factually insufficient to sustain the jury verdicts,
relying on the conflicts in his daughters=
testimony.

A.  Standard of Review








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.[2]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.[3]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[4]








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@[5]  A jury may choose to believe some witnesses
but not others; it may also believe some portions of a witness=s
testimony but reject other portions of the same witness=s
testimony.[6]  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence.[7]  We may not simply substitute our judgment for
the factfinder=s.[8]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@[9]  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@[10]  Our deference in this regard safeguards the
defendant=s right to a trial by jury.[11]

B.  Background Facts








K.L.P.
and K.M.P. were born on January 16, 1990; K.O.P. was born on November 29,
1991.  The family lived in Springtown, Parker County, Texas for
several years before moving to Iowa.  Shelly, the girls= mother
and Appellant=s wife, testified that in the
spring of 2005, while the family was still in Iowa, she became concerned after a
conversation with K.M.P. that Appellant was taking nude photographs of the
girls.  When Shelly asked Appellant for
the family digital camera and explained that she wanted to determine whether
there were any such images of the girls on it, Appellant told her that Ahe only
did that to see if they would do as he told.@  In February 2006, Shelly went to jail and
eventually prison for mail fraud. 
Appellant and their daughters moved back to Springtown in March 2006.  Shelly moved to a halfway house in Fort Worth in May 2007
and joined the family in Springtown on or about June 19, 2007.

According
to K.O.P.=s testimony, at the end of
November or early in December 2007, she got in trouble for skipping
school.  Appellant told her to consider
having sex with him.  She told him, ANo,@ and in
mid-December 2007, told her mother about that incident as well as past
incidents.








Shelly
testified that in approximately December 2007, she and K.O.P. had a
conversation about Appellant acting inappropriately with the girls.  Shelly then spoke to K.L.P. and K.M.P.  After speaking with the girls, Shelly took
them to the home of their maternal grandfather. 
When she returned home that same evening, she told Appellant that she Aknew he
had had sex with@ K.L.P. and Athat he
had made the other two [K.M.P. and K.O.P.] give him blow jobs,@ that
is, Aoral
sex.@  Shelly testified that when she told him that
she knew about the sexual intercourse with K.L.P., Appellant Akind of
put his head down and said he didn=t know
why he had done it and that he was sorry.@  Shelly stated that when she confronted him
with the fact that he had had oral sex with their other two daughters,
Appellant Asaid that he would promise never
to be around the girls alone again . . . and that he was sorry.@  He also promised A[t]hat
he would get counseling and wouldn=t touch
them again and would act like a normal father.@  He did not deny Shelly=s
accusations or say that the girls had lied. 
The next day, Shelly brought the girls back home, and Appellant
apologized and said that Ait wouldn=t happen
again.@  Shelly did not notify the police or CPS.

Walter
Smith, Appellant=s friend, testified that on
February 10, 2008, Appellant told him that the girls were going to accuse
Appellant Aof doing something with them to
save their mother from going back to prison.@  Appellant also discussed the fact that Shelly
shaved her pubic area and he liked it. 
Appellant told Walter that he would go into the bathroom when the girls
were showering and  that Ahe would
notice that they also had a shaved area as well.@  








Appellant
had told Walter on a prior occasion that when the family was living in Iowa, he and the girls
had played a Atitty twisting@
game.  A friend spending the night with
the girls had told her mother, who had reported the incident to Iowa=s agency
charged with the protection of children. 
The agency investigated the allegation but did not remove the girls from
the home.  Walter shared his concerns
with his girlfriend, Laurie Parker, Shelly=s
coworker.  Laurie told Shelly, who then
spoke with Walter.

After
her conversation with Walter, Shelly went home and packed Appellant=s
bags.  When he got home and asked what
was going on, she told him that Ahe was
stupid . . . [a]nd he had gotten mouthy and that [she] wasn=t going
to have him bragging about something he had done.@  She still did not notify the police or CPS,
but Walter and Laurie did.

On
February 15, 2008, after CPS had been notified but before Appellant=s
arrest, a sheriff=s investigator, Robert Pawley,
and a CPS investigator interviewed the girls at their school.  The police then searched the home with Shelly=s
consent and seized a digital camera and two desktop computer towers.  With Shelly=s
permission, the police searched the SD card in the digital camera the following
week.  The police also conducted more
extensive interviews with Shelly and the girls. 
Pawley testified that seeing the digital pictures confirmed his belief
that the girls had been sexually abused and confirmed the girls=
reports.  An arrest warrant was then
issued, and Appellant was arrested in Amarillo
in late February 2008.  Appellant told
the CPS investigators that the girls were liars.








Appellant=s
jailhouse conversations with his mother were recorded, and two were admitted
into evidence.  In a telephone call he
made from jail to his mother, Appellant stated, A[T]hey
were never forced. . . .  I
treated them like adults.  We sat down,
we discussed it, we talked about it, and the decision was made.@  In a later telephone call with his mother,
after she had testified under subpoena before the grand jury, he stated that he
had incriminated himself in the earlier telephone call and in jailhouse
visits.  His mother stated in the
telephone conversation that the choices he had made were bad but that he was
not bad.

Appellant=s
daughters testified to hundreds of sexual offenses committed by Appellant over
a period of more than two years, most happening in Parker County
between May 2006 and November 2007.

At some
point at the dinner table, Appellant and the girls had a conversation in which
the girls discovered that they had all three been participating in sexual acts
with him, and they reached an agreement where the sisters would take turns
servicing him, with each sister performing once a week.  Later, at another meeting, it was decided
that he would be serviced every night by the girls, one per night.

The girls=
testimony, which was at times externally and internally conflicting, is
presented in more detail below.








Parnell
Edward Ryan, a psychologist, licensed professional counselor, and licensed sex
offender treatment provider, testified that he evaluated the three complainants
in June 2008 at the request of CPS.  He
testified that K.L.P. exhibited anxiety and depression, which he classified as
symptoms of sexual abuse.  He stated that
she also described what had occurred Ain a
manner of someone who has been in an incestuous family.@  He opined that K.L.P. was somewhere in
between repression and recovery, but Aleaning
towards recovery.@ 
He stated that K.M.P.=s
description of what had occurred was consistent, which he indicated was a
characteristic of victims of sexual abuse. 
He also opined that her reaction was more of repression than
recovery.  He stated that K.O.P. fell
somewhere between K.L.P. and K.M.P. in terms of symptomology; that is, she fell
between her sisters on the continuum from repression to recovery.

State=s
Exhibits 8, 8A, 8B, and 8C, a 2006 calendar and color-coded overlays
summarizing the testimony of each complainant, and State=s
Exhibits 9, 9A, 9B, and 9C, a 2007 calendar and color-coded overlays
summarizing the testimony of each complainant, were admitted into evidence. 








C.  The Daughters=
Testimony

1.  Sexual Performance by a
Child Counts[12]

Each
indictment contains one count of sexual performance.  The counts allege that Appellant Adid then
and there intentionally or knowingly induce@ the
girls Ato pose
for photographs . . . which contain the lewd exhibition of the
genitals and any portion of the female breast below the top of the areola.@  The counts alleged that K.L.P. and K.M.P.
took the photographs of each other and that K.O.P. took the photographs of
herself.  The prosecutor elected to rely
on conduct alleged to have occurred on or about May 18, 2006 for the sexual
performance counts regarding K.L.P. and K.M.P. and on conduct alleged to have
occurred on or about August 2, 2006 for the sexual performance count regarding
K.O.P.








K.L.P.
testified that in April 2006, when she and K.M.P. were sixteen years old,
Appellant asked her and her sister to take nude pictures of each other, playing
with themselves.  K.M.P.=s
testimony confirmed K.L.P.=s.  K.L.P. identified State=s
Exhibits 10 and 11, which were admitted into evidence, as pictures of herself
and her twin, respectively.  K.M.P.=s
testimony tracked K.L.P.=s.  Both photographs exhibit breasts and
genitals, and both pictures are stamped A05/18/2006.@

K.O.P.
testified that in early August 2006, Appellant asked her to take some Anaughty@
pictures of herself.  State=s
Exhibit 12 is a photograph of K.O.P., showing her breasts and genitalia.  K.O.P. testified that she took the photograph
in 2007 but that it is the same type of photograph that she originally took in
August 2006.  On cross-examination,
K.O.P. testified that nude pictures of her were taken on three separate
occasions, all in Texas.  The first two episodes occurred when she was
fifteen; the last one occurred when she was sixteen.  K.O.P. took the photographs in the first and
third episodes; K.L.P. took the photographs in the second episode.  The photograph in Exhibit 12 was taken in the
third episode by K.O.P.  K.O.P. testified
that the pictures from the first two episodes were still in existence.  On redirect, K.O.P. testified that she took
the pictures because Appellant requested it and that she did not really feel
like she had a choice at the time; she stated, ALike, I
was scared if I didn=t do it.@  She also testified that Appellant had
downloaded the photographs to the family computer.

Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support Appellant=s
convictions for the three sexual performance counts.








2.  Counts Alleging Digital Penetration and
Penetration of Complainants= Mouths with Appellant=s Sexual Organ[13]

 

Each
indictment contains four counts alleging the penetration of the complainant=s mouth
with Appellant=s sexual organ.  The indictments concerning conduct
perpetrated against K.L.P. and K.M.P. each contain four counts alleging digital
penetration by Appellant; the indictment concerning conduct perpetrated against
K.O.P. contains two counts alleging digital penetration by Appellant.

a.  K.L.P.








The
indictment alleging conduct perpetrated against K.L.P. contains four counts
alleging the penetration of her mouth by Appellant=s sexual
organ and four counts alleging the penetration of her sexual organ by his
finger.  For the oral sex counts in which
K.L.P. was the complainant and Appellant was alleged to have penetrated her
mouth with his sexual organ, Counts I, III, VII, and XI, the prosecutor elected
to rely on conduct alleged to have occurred on or about June 12, 2006, July 3,
2006, August 1, 2006, and November 27, 2006, respectively.  For the digital counts in which K.L.P. was
the complainant, Counts II, IV, VIII, and XII, the prosecutor elected to rely
on conduct alleged to have occurred on or about June 12, 2006, July 3, 2006,
August 1, 2006, and November 6, 2006, respectively.

K.L.P.
testified that she performed oral sex on Appellant in the second week of June
2006.  She also testified that during the
same incident, he penetrated her Alady
parts@ with
his finger.  On cross-examination, she
confirmed that by Alady parts,@ she
meant the female reproductive sexual organs. 
She also testified that this same conduct, both the oral sex and the
digital penetration, happened weekly from June 2006 through December 2006.  Later, she clarified her testimony to say
that from the end of August 2006, some weeks they had anal sex instead of oral
sex; they would Aswitch off.@

The 2006
calendar and K.L.P.=s corresponding overlay support
the dates elected by the State for all of the relevant counts except Count
XI.  For that count, the prosecutor told
the jury during closing argument that the State would rely on conduct that was
alleged to have occurred on November 27, 2006 because K.L.P. had testified that
she performed oral sex on Appellant during the four-way (with Appellant and the
three complainants) that she described as occurring on or about that day.  K.L.P. did testify that the four-way occurred
after Thanksgiving but before December. 
But she did not testify that she performed oral sex on Appellant during
that episode, nor did she testify that she did not.  She did testify that they all agreed never to
engage in a four-way again.








K.O.P.
testified that two four-ways happened, one in early November and one in
mid-November, and that all the girls performed oral sex on Appellant during
each episode.  K.M.P. testified that she
remembered at least two four-waysCone
after her seventeenth birthday (and therefore not indicted) and one that she testified
at one point happened before and at another point after her seventeenth
birthday.  Her description of the
four-ways did not include any mention of K.L.P. providing oral sex to
Appellant.  Nevertheless, the jury could
have relied on K.L.P.=s testimony about the timing of
the four-way along with K.O.P.=s
testimony that K.L.P. performed oral sex on Appellant during the four-way to
properly convict him on that count.[14]

Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support the verdicts on the four counts alleging the penetration
of K.L.P.=s mouth by Appellant=s sexual
organ and the four counts alleging the penetration of her sexual organ by his
finger.

b.  K.M.P.








The
indictment alleging conduct perpetrated against K.M.P. contains four counts
alleging the penetration of her mouth by Appellant=s sexual
organ and four counts alleging the penetration of her sexual organ by his
finger.  For the oral sex counts in which
K.M.P. was the complainant and Appellant was alleged to have penetrated her
mouth with his sexual organ, Counts I, III, VII, and XI, as well as the digital
counts in which K.M.P. was the complainant, Counts II, IV, VIII, and XII, the
prosecutor elected to rely on conduct alleged to have occurred on or about
August 14, 2006, December 4, 2006, August 21, 2006, and November 27, 2006, the
four-way, respectively.

K.M.P.
testified that she freaked out when her father first requested oral sex in June
2006 and that she refused.  She said that
at some point that night, K.L.P. went into his room.  When K.L.P. came out of the room, she
indicated that Appellant wanted K.M.P. to go into his room.  K.M.P. maintained her refusal.  K.M.P. testified that Appellant Aleft
[her] alone for a little while.@  Three weeks to a month later, he asked her
repeatedly to perform oral sex on him; she still refused.  At some point she told him that she would
give him a Ahand job,@ that
is, she agreed to use her hand on his penis to stimulate him.  K.M.P. testified that the first occurrence of
this sex act was probably in the last part of June 2006.  During the same occurrence, Appellant
digitally penetrated her Aprivate area@ or
sexual organ with his finger.  Appellant=s
ejaculate landed on K.M.P.=s
stomach.  K.M.P. testified that she
performed a Ahand job@ on
Appellant and that he digitally penetrated her sexual organ again the next
week.








K.M.P.
testified that from the time of the July 2006 meeting of Appellant and the
girls where the schedule was set to allow each girl to Aperform@ once a
week, Appellant would digitally penetrate her, and she would give him a hand
job weekly until approximately the middle of August, when he said that he was
tired of doing the same thing and asked her to switch to performing oral sex.  She refused, but he cajoled her, stating, A[J]ust
try it and see what happens.  If you don=t like
it, we=ll go
back [to hand jobs].@ 
K.M.P. then performed oral sex on Appellant as he digitally penetrated
her sexual organ.  He ejaculated in her
mouth.  From that point until
approximately mid-September 2006, K.M.P. continued to perform oral sex on
Appellant weekly, and in the same sessions, he would digitally penetrate her
sexual organ.  In mid-September 2006,
K.M.P. testified, they Achanged the schedule,@ with
the girls performing sexual acts with their father in rotation, one girl per
day, seven days a week.

K.M.P.
remembered two Athree-ways@ with
Appellant and K.L.P., one in December but before Christmas and one after the
twins=
seventeenth birthday (and therefore not part of the indicted conduct).  She answered, AYes,@ to the
prosecutor=s question whether the first
week of December 2006 would be an approximate date of the first
occurrence.  K.M.P. testified that during
the first occurrence, she performed oral sex on Appellant, and he digitally
penetrated her sexual organ.








K.L.P.
testified that the three-way with Appellant, K.M.P., and herself occurred one
night in late September or early October 2006. 
K.L.P. testified that both girls performed oral sex on Appellant during
this encounter.

K.M.P.
testified that she remembered at least two four-ways.  She believed that the first one occurred
before her seventeenth birthday but also testified that it occurred after her
seventeenth birthday.  She had Anever
thought it was really possible@ and
stated that they Akind of had a hard time trying
to figure out what to do.@ 
She testified that during the occurrence, she performed oral sex on
Appellant, and he penetrated her sexual organ with his finger.

K.L.P.
testified that at the four-way, which she also testified happened in late
November 2006, Appellant performed oral sex on K.M.P. and digitally penetrated
K.M.P.=s sexual
organ.  K.L.P. did not testify that
K.M.P. performed oral sex on Appellant.

K.O.P.
testified that two four-ways happened, one in early November and one in
mid-November, that all the girls performed oral sex on Appellant during each
episode, and that no digital penetration occurred during those events.








The 2006
calendar and K.M.P.=s corresponding overlay support
the State=s elections for Counts I, II,
III, IV, VII, and VIII of the indictment in which she is the complainant.  K.L.P.=s 2006
overlay supports the State=s
elections for Counts XI and XII; K.O.P. and K.M.P.=s
testimony supports the conclusions that K.M.P. performed oral sex on Appellant
and that he digitally penetrated her sexual organ during the four-way.

Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support the verdicts on the four counts alleging the penetration
of K.M.P.=s mouth by Appellant=s sexual
organ and the four counts alleging the penetration of her sexual organ by his
finger.

c.  K.O.P.

The
indictment alleging conduct perpetrated against K.O.P. contains four counts
alleging the penetration of her mouth by Appellant=s sexual
organ and two counts alleging the penetration of her sexual organ by his
finger.  For the oral sex counts in which
K.O.P. was the complainant and Appellant was alleged to have penetrated her
mouth with his sexual organ, Counts I, III, VIII, and X, the prosecutor elected
to rely on conduct alleged to have occurred on or about May 15, 2006, November
6, 2006, September 3, 2007, and November 19, 2007, respectively.  For the digital counts in which K.O.P. was
the complainant, Counts II and IV, the prosecutor elected to rely on conduct
alleged to have occurred on or about May 15, 2006 and July 3, 2006,
respectively.








K.O.P.
testified that the first sexual act that occurred with Appellant and her after
they moved back to Texas
occurred toward the middle to the end of May 2006.  Appellant asked her to perform oral sex on
him, and she did, and at the same time, he digitally penetrated her sexual
organ.  She also testified that this type
of occurrence happened once or twice that week as well as the next and that
these occurrences continued at that frequency through the middle of July 2006.

K.O.P.
also testified that during the first of the two four-ways she remembered, which
she said occurred in early November 2006, all three girls performed oral sex on
Appellant.  K.L.P. also testified that
K.O.P. performed oral sex on Appellant during the four-way, which K.L.P. stated
happened at the end of November.

K.O.P.
also testified that after the second four-way, which she placed in early to
mid-November 2006, until her Mother came home in June 2007, she and Appellant
performed simultaneous oral sex on each other once or twice each week.  By August 2007, K.O.P. testified, she and
Appellant were again performing oral sex on each other once or twice a week,
and this behavior continued through the end of November 2007.

The 2006
and 2007 calendars, along with K.O.P.=s
overlays, support the dates elected by the State.








Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support Appellant=s
convictions for the four counts alleging that he penetrated K.O.P.=s mouth
with his sexual organ and the two counts alleging that he penetrated her sexual
organ with his finger.

3.  Counts Alleging Contact of Complainants= Sexual Organs with
Appellant=s Mouth or the Mouths of
Their Sisters[15]

 

Each
indictment contains three counts alleging contact with the complainant=s sexual
organ by Appellant=s mouth.  The indictments concerning conduct
perpetrated against K.L.P. and K.M.P. each contain three counts alleging that
Appellant caused contact with the sexual organ of the complainant by the mouth
of one of the other daughters.  The
indictment concerning conduct perpetrated against K.O.P. contains two such
counts.

a.  K.L.P.








The
indictment alleging conduct perpetrated against K.L.P. contains three counts,
Counts V, IX, and XIII, alleging that Appellant caused her sexual organ to
contact his mouth.  For these counts, the
prosecutor elected to rely on conduct alleged to have occurred on or about October
16, 2006, November 1, 2006, and November 27, 2006, the four-way,
respectively.  That indictment also
contains two counts, Counts X and XIV, alleging that Appellant caused K.L.P.=s sexual
organ to contact K.M.P.=s mouth and one count, Count XV,
alleging that he caused K.L.P.=s sexual
organ to contact K.O.P.=s mouth.  For these counts, the prosecutor elected to
rely on conduct alleged to have occurred on or about September 25, 2006,
November 27, 2006, the four-way, and November 1, 2006, respectively.

K.L.P.
testified that in mid-October 2006, Appellant told her that he wanted to do
something different, A69.@  He put his mouth on her genitals, and she
likewise performed oral sex on him. 
K.L.P. testified that she and Appellant performed oral sex on each other
(with no one else around) a couple more times in 2006, approximately once in
November and once in December.

Additionally,
K.O.P. testified that during the second four-way she remembered, which she
believed happened around the second week in November 2006, Appellant performed
oral sex on each daughter.  Neither
K.L.P. nor K.M.P. testified that Appellant performed oral sex on K.L.P. during
the four-way. 

K.L.P.
testified that in late September or early October 2006, she, Appellant, and
K.M.P. had a Athree-way.@  K.L.P. and K.M.P. both testified that during
the event, K.M.P. performed oral sex on K.L.P.

K.L.P.
and K.M.P. also both testified that K.M.P. performed oral sex on K.L.P. during
the four-way.








K.L.P.
testified that in early November 2006, Appellant, K.L.P., and K.O.P. had a Athree-way.@  K.L.P. testified that both girls performed
oral sex on each other during the event.  K.O.P. denied ever performing oral sex on or
receiving oral sex from her sisters. 
Again, the jury may choose to believe all, part, or none of a witness=s
testimony.[16]  The 2006 calendar and K.L.P.=s
overlay support the State=s elections.

Applying
the appropriate standard of review, we hold that the evidence is factually
sufficient to support Appellant=s
convictions for these six counts.

b.  K.M.P.

The
indictment alleging conduct perpetrated against K.M.P. contains three counts,
Counts V, IX, and XIII, alleging that Appellant caused her sexual organ to
contact his mouth.  For these counts, the
prosecutor elected to rely on conduct alleged to have occurred on or about
December 4, 2006, the three-way, December 1, 2006, and November 27, 2006, the
four-way, respectively.  That indictment
also contains two counts, Counts VI and XIV, alleging that Appellant caused
K.M.P.=s sexual
organ to contact K.L.P.=s mouth and one count, Count XV,
alleging that he caused K.M.P.=s sexual
organ to contact K.O.P.=s mouth.  For these counts, the prosecutor elected to
rely on conduct alleged to have occurred on or about December 4, 2006, November
27, 2006, and November 27, 2006, respectively, that is, the three-way and
four-way.








K.M.P.
remembered that the first occasion in which she and Appellant performed oral
sex on each other at the same time happened before the three-ways and four-ways
and before Christmas 2006.  The event was
recorded on K.M.P.=s overlay to the 2006 calendar
at trial.

The 2006
calendar and K.M.P.=s overlay provide that the first
three-way she remembered happened on or about December 4, 2006.  K.M.P. remembered two Athree-ways,@ one
after school started but before Christmas and one after the twins=
seventeenth birthday (and therefore not part of the indicted conduct).  K.M.P. testified that during that first
episode with K.L.P. and Appellant, Appellant performed oral sex on K.M.P.  K.M.P. and K.L.P. also testified that K.L.P.
performed oral sex on K.M.P. during that event.

K.L.P.,
K.M.P., and K.O.P. testified that during the four-way, Appellant performed oral
sex on K.M.P.  K.M.P. also testified that
K.L.P. and K.O.P. both performed oral sex on her during the four-way, although
K.O.P. denied ever performing oral sex on her sisters.  Again, the jury could choose to believe all,
part, or none of a witness=s
testimony and was responsible for resolving all conflicts in the evidence.[17]








Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support Appellant=s
convictions on these six counts.

c.  K.O.P.

The
indictment alleging conduct perpetrated against K.O.P. contains three counts,
Counts V, IX, and XI, alleging that Appellant caused her sexual organ to
contact his mouth.  For these counts, the
prosecutor elected to rely on conduct alleged to have occurred on or about November
20, 2006, September 3, 2007, and November 19, 2007, respectively.  That indictment also contains one count,
Count VI, alleging that Appellant caused K.O.P.=s sexual
organ to contact K.M.P.=s mouth and one count, Count
VII, alleging that he caused K.O.P.=s sexual
organ to contact K.L.P.=s mouth.  For these counts, the prosecutor elected to
rely on conduct alleged to have occurred on or about November 27, 2006, the
four-way.

K.L.P.
and K.M.P. both testified that they performed oral sex on K.O.P. during the
four-way, which K.L.P. placed near the end of November 2006.  K.O.P. denied ever receiving oral sex from
either sister.








K.O.P.
testified that after the four-way, which she placed in early to mid- November
2006, until her Mother came home in June 2007, she and Appellant performed
simultaneous oral sex on each other once or twice each week.  By August 2007, K.O.P. testified, she and
Appellant were again performing oral sex on each other once or twice a week,
and this behavior continued through the end of November 2007.

The 2006
and 2007 calendars, along with K.O.P.=s and
K.L.P.=s
overlays, support the dates elected by the State.

Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support Appellant=s
convictions on these five counts.

4.  Count Alleging Penetration of K.L.P.=s Sexual Organ by
Appellant=s Sexual Organ[18]

 








Appellant
was charged in one count with penetrating K.L.P.=s sexual
organ with his sexual organ.  For this
count, the prosecutor elected to rely on conduct alleged to have occurred on or
about November 27, 2006, during the four-way. 
K.L.P. testified that during the late November 2006 four-way, Appellant
penetrated her sexual organ with his penis. 
She also testified that her sisters were aware during the four-way that
she had already had vaginal intercourse with Appellant in a previous encounter,
and she also testified that the first time she and Appellant had had vaginal
intercourse was after the three-way with K.O.P., which happened at the end of
October or beginning of November 2006. 
(The third time that K.L.P. had vaginal intercourse with Appellant,
according to the girls= testimony, was the night of
Christmas 2006 in Amarillo, for which Appellant
was not indicted in Parker
 County.)

K.O.P.
also testified that Appellant and K.L.P. had penile-vaginal intercourse during
the four-way, which she placed in mid-November 2006.  The 2006 calendar and K.L.P.=s
overlay support the State=s election.

Based on
the applicable standard of review, we hold that the evidence is factually
sufficient to support Appellant=s
conviction for penetrating K.L.P.=s sexual
organ with his sexual organ.

D.  Factually Sufficient Evidence on All Live
Counts

Having
held the evidence factually sufficient to support Appellant=s
forty-three convictions, we overrule his third, fourth, fifth, sixth, seventh,
and eighth points.

II.  The State=s
Election

The
State elected which acts to rely on after the close of all the evidence.  The jury charge did not contain an
instruction regarding the elections.  The
jury charge did include the following,








The defendant is on trial
solely on the charges contained in the indictment.  In reference to evidence, if any, that the
defendant has engaged in transactions or acts other than that which is charged
by the indictment in this case, you are instructed that you cannot consider
such other transactions or acts, if any, for any purpose, unless you find and
believe beyond a reasonable doubt that the defendant engaged in said
transactions or acts, and, even then, you may only consider said evidence for
the purposes of determining the state of mind of the defendant and the child,
or the previous and subsequent relationship between the defendant and the
child, if any, and only for other purposes such as proof of motive,
opportunity, intent, preparation, plan, knowledge, or absence of mistake or
accident.

 

The
prosecutors, using Acheat sheets@ and the
calendars and overlays in State=s
Exhibits 8, 8A, 8B, 8C, 9, 9A, 9B, and 9C, discussed every election in their
closing argument.  The prosecutor also
explained to the jury, 

Robert and I have to make
cheat sheets for everything.  And what we=ve done and what we=re going to go through in
just a minute here is we made cheat sheets with respect to each and every one
of the allegations that=s alleged in the
indictment.  And I=m going to walk you
through . . . my part of the closing as to how we get a conviction on
each and every one of those.

 

The first thing I want to
talk about, though, is you=ll remember back from voir dire conversation
about on or about.  Mr. DuBoise told you
that the [S]tate has to put a date in the indictment.  You=ll see off to the side of my little cheat sheet
here 5/1/06, 7/1/06, 8/1/06.  We have to
pull a date on or about the time that we believe, based upon the time of the
indictment, that an act may have occurred.

 

What the law says and
what the charges told you is that if the [S]tate proves that these acts
happened at any time prior to the indictment, for all intents and purposes,
that that=s going to be sufficient
for you if we=ve proven each and every
element.  And we don=t necessarily have to
prove the specific date in the indictment.

 

The other thing that I
want to talk about real quick is that the law says that in a case of this
nature, we can bring to you every act, every sexual act that occurred between a
defendant and a victim, okay?  We have to
point you to specific acts for you to convict in the indictment.








So while you may have
heard of 75 cases where the defendant had oral sex performed on him by a
particular daughter, we as the [S]tate have to point you to a specific act, and
we=re going to do that as we
go through the cheat sheets.  With
respect to the other 49 of the 50, for example, that you=ve heard, you=re allowed to consider
that, if you think it=s relevant, and if it=s proven to you beyond a
reasonable doubt with respect to things like state of mind of the victim, state
of mind of the defendant, absence of mistake, intent, motive, things of that
nature.  And all that stuff, again, is in
the charge.

 

In his
first point, Appellant contends that the trial court reversibly erred by
denying his motion to require the State to make an election and by not
thereafter restricting the jury=s
deliberations at guilt according to the election.  In his second point, Appellant contends that
the trial court abused its discretion by denying his request for a jury charge
limiting Athe jury=s
consideration of offenses to those acts on specific dates relating to a
specific count in the indictments for purposes of determining whether the
allegations in said count were proven beyond a reasonable doubt to support a
conviction thereunder as opposed to permitting the jury to convict on an
extraneous matter.@

A.  Appellant=s Motion
to Have the State Elect








The
trial court denied the first part of Appellant=s
motion, which requested the State to make an election of which of multiple acts
arising out of the same criminal transaction and continuing criminal episode
that it desired to prosecute and waive the others so as to avoid a Astop
action@ prosecution.[19]  Appellant mentions this ruling but does not
otherwise address it in his brief.  To
the extent that he complains of the ruling, we overrule such complaint as
inadequately briefed.[20]

The
second part of Appellant=s motion to elect asked that the
trial court force the State to be specific as to which date related to which
count of the various acts alleged so that he could understand what evidence he
was defending against as to each count. 
While the trial court initially denied this motion, the trial court
later granted it, and, for each live count, the prosecutor read a date into the
record.  We therefore overrule Appellant=s first
point to the extent that it complains about the denial of his motion.

B.  Omitted Jury Instruction is Error, But
Harmless








Regarding
Appellant=s complaints about the jury
charge, found in both his first and second points, when the State elects an act
on which it will rely for conviction of an offense, a defendant is entitled to
a jury instruction providing that the jury should consider only the elected act
in determining whether a defendant is guilty of that offense and limiting the
jury=s
consideration of other, unelected acts to the purposes for which they were
admitted.[21]  The State concedes that the trial court erred
by not so instructing the jury.

Error in
the charge, if timely objected to in the trial court, requires reversal if the
error was Acalculated to injure the rights
of [the] defendant,@ which means no more than that
there must be some harm to the accused from the error.[22]  In other words, a properly preserved error
will require reversal as long as the error is not harmless.[23]  In making this determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@[24]








Given
the extensive evidence, especially the testimony of the complainants, the 2006
and 2007 calendars with overlays, to which the jury had access, and the State=s
count-by-count recitation in its closing argument of which date and act it was
relying on for every live count and why, we conclude that the trial court=s error
in omitting an instruction concerning election in the charge was harmless.  Accordingly, we overrule Appellant=s first
two points.

III.  Conclusion

Having
overruled all of Appellant=s
points, we affirm the trial court=s
judgments.

PER
CURIAM

PANEL:  DAUPHINOT, LIVINGSTON, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
October 22, 2009











[1]See Tex. R. App. P. 47.4.





[2]Neal v. State, 256 S.W.3d 264, 275 (Tex.
Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).





[3]Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson,
204 S.W.3d at 414B15, 417.





[4]Watson, 204 S.W.3d at 417.





[5]Id.





[6]Losada v. State,  721 S.W.2d 305, 309 (Tex. Crim. App. 1986).





[7]Watson, 204 S.W.3d at 417.





[8]Johnson v. State, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[9]Johnson, 23 S.W.3d at 8.





[10]Id. at 9.





[11]Lancon, 253 S.W.3d at 704.





[12]See Tex.
Penal Code Ann. ' 43.25 (Vernon Supp. 2009).





[13]See id. ' 22.011(a)(2)(A)(B),
(f).





[14]See Losada, 721 S.W.2d at 309.





[15]See Tex. Penal Code Ann. ' 22.011(a)(2)(C),
(f) (Vernon
Supp. 2009).





[16]Losada, 721 S.W.2d at 309.





[17]Id.





[18]See Tex.
Penal Code Ann. ' 22.011(a)(2)(A), (f)
(Vernon Supp.
2009).





[19]See Patterson v. State, 152 S.W.3d 88 (Tex. Crim. App. 2004).





[20]See Tex. R. App. P. 38.1(i);
Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053
(2001); Mosley v. State, 983 S.W.2d 249, 256 (Tex. Crim. App. 1998) (op.
on reh=g), cert. denied,
526 U.S.
1070 (1999).





[21]Isenhower v. State, 261
S.W.3d 168, 174 (Tex. App.CHouston [14th Dist.] 2008, no pet.); Rivera v.
State, 233 S.W.3d 403, 406 (Tex. App.CWaco 2007, pet. ref=d).





[22]Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2007); Abdnor
v. State, 871 S.W.2d 726, 731B32 (Tex. Crim. App. 1994); Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g); see also Minor v.
State, 91 S.W.3d 824, 827B29 (Tex. App.CFort Worth 2002, pet. ref=d) (applying analysis).





[23]Almanza, 686 S.W.2d at 171.





[24]Id.; see also Ovalle v. State, 13 S.W.3d 774,
786 (Tex. Crim. App. 2000).